John McGlown, the appellant, was convicted for rape in the first degree. He was sentenced to life without parole and fined $1,000. He raises four issues on this appeal from that conviction. *Page 1028 
 I.
The trial court did not err in refusing to grant a recess during the trial so that the appellant could obtain a medical test to determine whether or not he had "herpes."
The victim was the appellant's 18-year-old daughter. On direct examination, she testified that the appellant had been sexually abusing and having sexual intercourse with her since she was nine years old. The prosecutor deliberately elicited her testimony that she had "herpes," that she had had sexual contact with only one person other than the appellant, and that, with this other person, she had "tried but could not [go] through" with sexual intercourse. R. 106-07. The victim testified that she was "[a]bout sixteen and a half or seventeen. He was wearing a condom at the time." R. 107.
On cross-examination, the following occurred:
 "Q. [defense counsel:] And you've got another problem besides from the fact that you caught herpes from a young man, don't you?
"A. [the victim:] Yes. . . . I have narcolepsy."
". . . .
 "Q. Now, I need to find out, if I could please, when this incident with this gentleman who gave you herpes took place?
 "MR. BINFORD [assistant district attorney]: Judge, I would object to that. There is no testimony that this man gave her herpes.
 "MR. MOTLEY: Oh, I'm sorry, Judge. That's true. I —
". . . .
 "Q. (BY MR. MOTLEY) If I could, . . . where did you contract herpes?
 "A. The only way I could have would have been from my father." R. 112, 120-22.
Defense counsel then elicited the victim's testimony that the only person who could have given her herpes was the appellant.
The victim's physician, Dr. Diana Mancuso, testified that in 1984 and 1989 the victim tested positive for trichomoniasis, a sexually transmitted disease. Dr. Diana Mancuso stated that in 1989 the victim also tested positive for herpes, and that the victim indicated she had been "having this particular problem" for two years. R. 154.
On cross-examination of Dr. Mancuso, defense counsel established that if the appellant had transmitted herpes to the victim, the appellant would have to be a carrier, that herpes never "went away," and that the appellant could be tested to determine whether he had herpes.
At the conclusion of Dr. Mancuso's testimony, the trial judge announced a short recess. At that time defense counsel indicated that he was surprised by the victim's testimony that the appellant had given her herpes. Counsel requested that the trial judge either grant a mistrial or a 24-hour continuance to allow the appellant to be tested for herpes. The trial judge denied both requests.
 "The defendant apparently intends to take the witness stand. The issue of whether or not the alleged victim has herpes as a result of alleged encounters with the defendant is collateral to this proceeding and as Mr. Bindford correctly states the trier of fact could rationally determine that she received sexually transmitted diseases as a result of contact with other people, and still bind the State as carrying the burden of proof in regard to the principle charged in the indictment.
 "On that basis, I deny the request for continuance and I deny the motion for a mistrial to let the requested testing take place." R. 181-82.
The appellant testified in his own defense and stated that he did not have and never had had herpes.
"[I]n Alabama, our courts have always held it is discretionary with the trial court whether it should halt or suspend the trial to enable a party to secure or produce witnesses in court. . . . And, in the exercise of that discretion the trial court is not to be reversed save for gross abuse of discretion." Alonzo v. State ex rel. Booth, 283 Ala. 607,610, 219 So.2d 858, 861, cert. denied, 396 U.S. 931,90 S.Ct. 269, 24 L.Ed.2d 229 (1969). In Ex parte Saranthus, *Page 1029 501 So.2d 1256 (Ala. 1986), the Alabama Supreme Court addressed the issue of a pretrial continuance:
 "A motion for a continuance is addressed to the discretion of the court and the court's ruling on it will not be disturbed unless there is an abuse of discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973). If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence. Knowles v. Blue, 209 Ala. 27, 32, 95 So. 481, 485-86 (1923)."
Saranthus, 501 So.2d at 1257. " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841,850, 11 L.Ed.2d 921 (1964)." Glass v. State, 557 So.2d 845, 848
(Ala.Cr.App. 1990).
"The reversal of a conviction because of the refusal of the trial judge to grant a continuance requires 'a positive demonstration of abuse of judicial discretion.' Clayton v.State, 45 Ala. App. 127, 129, 226 So.2d 671, 672 (1969)."Beauregard v. State, 372 So.2d 37, 43 (Ala.Cr.App.), cert. denied, 372 So.2d 44 (Ala. 1979). A "positive demonstration of abuse of judicial discretion" is required even where the refusal to grant the continuance is "somewhat harsh" and this Court does not "condone like conduct in future similar circumstances." Hays v. State, 518 So.2d 749, 759 (Ala.Cr.App. 1985), affirmed in part, reversed on other grounds,518 So.2d 768 (Ala. 1986), cert. denied, 485 U.S. 929, 108 S.Ct. 1099,99 L.Ed.2d 262 (1988). See also Connor v. State, 447 So.2d 860,863 (Ala.Cr.App. 1984) (no abuse of discretion found although court did not "approve of the manner in which this case was handled").
In this case, we find that the trial court did not abuse its discretion in denying the continuance because it was the defense that elicited the victim's testimony that the victim contracted herpes from the appellant. We note that there was no motion for new trial filed alleging that the appellant had actually tested negative for the herpes virus.
The finding that no reversible error was committed in this case should not be considered an approval of the trial court's denial of the requested recess. However, even if this Court would have granted the continuance in this case, the test for determining abuse of discretion is not what this appellate court would have done under the same circumstances. It is not the function of this Court to substitute its judgment for that of the trial court.
 II.
The prosecutor did not violate the principles of Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in using three of his ten peremptory strikes to remove three of the four black veniremembers. There was one black member of the jury.
Without making a finding that the appellant had established a prima facie case of racial discrimination, the trial judge requested the prosecutor to state his reasons for striking the three black veniremembers. The prosecutor's reasons were race-neutral. Those reasons were: 1) Veniremember 126 appeared "baffled or confused" about the prosecutor's inquiry as to whether any veniremember had a moral opposition or a religious opposition or an ethical belief that would interfere with their being able to sit on a jury and decide this case. His "general impression from talking to [126] during voir dire in the previous case is that she is not sure whether or not she can be fair and reach a verdict and exclude any personal beliefs that she has. She was very unsure. . . ." R. 19. She was unemployed and the prosecutor did not know whether she was married or single or how her spouse was employed. *Page 1030 
With regard to that veniremember, the trial judge stated:
 "I certainly will judicially notice what she said and her demeanor in an earlier case this week. There is certainly nothing wrong with the District Attorney's office relying on responses in other cases in exercising its right in peremptory challenge. She certainly did seem to be confused, almost addled, in her answers to questions, and I find that the State has shown appropriate racially neutral reasons to strike her. . . ." R. 26-27.
The prosecutor's reasons for striking the other two blacks were: 2) Veniremember 143 has a cousin who is in the county jail, having been prosecuted by the district attorney's office, and "his boss's son has a trial set this week." R. 21. 3) Veniremember 107 "has a nephew that was in prison and was prosecuted on a drug charge, arising out of this county, prosecuted by the D.A.'s office, and he apparently, according to his statement in voir dire, corresponds by letter with his nephew who was prosecuted by our office." R. 21.
We find that these reasons are acceptable race-neutral reasons. See Ex parte Branch, 526 So.2d 609, 623 (Ala. 1987);Currin v. State, 535 So.2d 221, 224 (Ala.Cr.App.), cert. denied, 535 So.2d 225 (Ala. 1988); Stephens v. State,580 So.2d 11, 19 (Ala.Cr.App. 1990), affirmed, 580 So.2d 26 (Ala.), cert. denied, ___ U.S. ___, 112 S.Ct. 176, 116 L.Ed.2d 138 (1991).
 III.
The prosecutor was properly allowed to introduce evidence concerning the prior sexual activity between the victim and the appellant.
 "[W]here . . . a defendant is charged with the first degree rape of his minor daughter, evidence establishing that he had raped and/or committed acts of sexual abuse toward her prior to or subsequent to the offense for which he is charged, is admissible to prove his motive in committing the charged offense. Such evidence tends to establish the inducement (i.e., unnatural sexual passion for his child) that led him to rape or molest her."
Bowden v. State, 538 So.2d 1226, 1235 (Ala. 1988).
 IV.
The appellant argues that "the complaining witness's statement to her doctor that her father sexually abused her was inadmissible as hearsay." Appellant's brief at 18.
On direct examination by the prosecutor, Dr. Mancuso testified without objection that the victim told her that she had had sexual contact of some nature with the appellant. R. 147. Later, Dr. Mancuso was permitted over objection to read her notes of the victim's medical history which included the following testimony:
 "Apparently, [the victim] confided in Ms. Montgomery that from the age of nine until approximately two years ago, her father was sexually abusive to her. [The victim] did not go into detail, but she did state that he had sexual intercourse with her on numerous occasions." R. 153.
In objecting to the admission of this testimony, defense counsel stated:
 "Judge, I'm going to object. Let [the victim] come in and testify to it. . . . Judge, it's part of the medical history on a sexual abuse charge, on a rape charge. What they are trying to do is get it in like there is some magic to it because a doctor is saying it now because [Dr.] Mancuso is testifying what [the victim] told us. [The victim] just talked to us on the stand." R. 151-52.
The controlling principle of law is set forth in Lee v.State, 565 So.2d 1153, 1154 (Ala. 1989):
 "In sexual offense cases, it is the general rule that testimony regarding a prosecutrix's complaint in the first instance must be confined to the mere showing of the fact that a complaint was made. Details of the occurrence are not admissible. See Lawson v. State, 377 So.2d 1115 (Ala.Cr.App. 1979), cert. denied, 377 So.2d 1121 (Ala. 1979). However, there are certain exceptions to that general rule. In Cady v. State, *Page 1031 455 So.2d 101 (Ala.Cr.App. 1984), the Court of Criminal Appeals wrote:
 " 'One exception is found in the permissible introduction of evidence as to the details of the victim's complaint for the purpose of corroborating the victim's testimony on direct examination as to the details of the crime, as to which the victim has been subjected to cross-examination calculated to reflect upon her credibility as a witness.'
"455 So.2d at 125.
 "On cross-examination of one of the victims, the defendants' attorney repeatedly inquired into the substance of the conversations between the victim and [an officer with the county sheriff's department] and [an investigator with the Department of Human Resources], with the apparent purpose of reflecting upon the child's credibility as a witness. This brought the testimony of [the officer and the investigator] within the purview of the aforementioned exception to the general rule, and the trial court was correct in allowing that evidence."
On cross-examination of the victim in this case, defense counsel questioned her not only about what she had and had not told Dr. Mancuso, but also about what she had and had not told others in an effort to discredit her testimony. Here, this brought the doctor's testimony within the exception to the general rule stated in Lee.
Furthermore, we note that the victim testified without objection on direct examination that she told Jamilla Montgomery that the appellant was sexually abusing her. Ms. Montgomery testified as a witness for the prosecution and corroborated the victim's complaint.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.