Everlean Hardy was charged by complaint and convicted for resisting arrest, Alabama Code (1975), § 13A-10-41, and for disorderly conduct, § 13A-11-7, in the District Court of Baldwin County. On appeal to the circuit court, she was tried by a jury and found guilty of both offenses. Four issues are raised on this appeal from those convictions.
 I
Daphne Police Officer Melvin Johnson arrested Ms. Hardy at the Oak Tree Lounge after she and others attacked and "jumped on" him after refusing a lawful order to go home. Defense counsel was cross examining Officer Johnson about his testimony in a prior proceeding. The trial judge instructed counsel: "If you are going to read from prior testimony, let him look at it." Defense counsel responded, "I am not questioning him from a prior proceeding at this time."
At the conclusion of his cross examination, defense counsel requested "to reserve this witness for later on, I am going to call him as my adverse witness when I present my case. At this time, I would like to reserve and ask that he be excluded from the rest of the testimony in the Courtroom." The trial judge refused to exclude *Page 267 
this witness when he discovered that defense counsel "didn't have him under subpoena."
 "THE COURT: If you have any questions to ask him, ask them now.
 "MR. SIMMONS (Defense Counsel): I want to wait until the rest of the testimony is heard, sir.
 "THE COURT: If that is so, why didn't you subpoena him if he was going to be your witness?
 "MR. SIMMONS: He was not going to be my witness but his testimony came out contradictory to what I expected it to be and at that rate, I would like to reserve him."
Defense counsel made no request that an instanter subpoena issue for Officer Johnson.
After the State rested its case in chief, defense counsel called Officer Johnson as his first witness but he was "not outside in the hall."
We find no abuse of the trial judge's discretion. "A trial court has discretion to allow or disallow a witness to be recalled for further cross examination. . . . It is within the court's discretion to allow the recall of a witness for the purpose of impeachment or to lay a foundation therefor." Baxterv. State, 360 So.2d 64, 66 (Ala.Cr.App. 1978); C. Gamble,McElroy's Alabama Evidence, § 440.01 (3rd ed. 1977). See also Alabama Code (1975), § 12-21-240 ("Witnesses appearing on a given date may be ordered by the court to attend court on a subsequent day fixed or named by the court" (emphasis added)). Absent surprise or some other valid reason, defense counsel should not be permitted to recall a witness for further cross examination or impeachment. Baxter, 360 So.2d at 66-67; Thomasv. State, 34 Ala. App. 470, 474, 41 So.2d 435 (1949) (For defendant, after completion of State's case, to recall State's witnesses to go into the matter of their testimony at former trial of the same case "would have been out of order and would have addressed itself to the discretion of the trial judge"). "A trial court should not allow a state witness to be `recalled' by the defense during its case-in-chief for purposes of further cross-examination and impeachment on matters to which the witness had previously testified." Walker v. State,416 So.2d 1083, 1091 (Ala.Cr.App. 1982).
Since defense counsel made no specific request that Officer Johnson be subpoenaed, we find no error in the trial judge's refusal to allow the witness to be recalled for further cross examination or impeachment. Gwin v. State, 425 So.2d 500, 509
(Ala.Cr.App. 1982), cert. quashed, Ex parte Gwin, 425 So.2d 510
(Ala. 1983).
Although defense counsel stated that Officer Johnson's testimony was "contradictory" to what he "expected", we do not accept this as a declaration that defense counsel was genuinely "surprised" and unprepared to impeach the witness after diligent preparation and investigation. Baxter, 360 So.2d at 66.
The statements of the trial judge to defense counsel ("If you are going to read from prior testimony, let him look at it" and "If you are going to question him from a prior proceeding transcript, let him look at a copy of it") and defense counsel's response ("I am not questioning him from a prior proceeding at this time, sir" (emphasis added)) indicate that defense counsel was prepared to impeach the witness but "want[ed] to wait until the rest of the testimony is heard" before so doing. The record shows no clear abuse of the trial judge's discretion in the refusal to allow defense counsel to postpone his cross examination or impeachment of Officer Johnson and we find no error. The record does not support Hardy's allegation that she was denied her constitutional right of cross examination.
 II
On appeal, Hardy alleges that the trial judge's questioning of her on the witness stand while she was testifying in her own behalf constitutes prejudicial error. This matter was initially raised in the motion for new trial, although there was no *Page 268 
objection at trial. This error has not been preserved for review. "The grounds urged for a new trial must ordinarily have been preserved at the trial by timely and sufficient objections." Fuller v. State, 365 So.2d 1010, 1012 (Ala.Cr.App. 1978), cert. denied, Ex parte Fuller, 365 So.2d 1013 (Ala. 1979).
Even if properly preserved, the judge's brief interrogation of the witness was proper. "In the interest of justice, a trial judge is given the authority to pose questions to a witness for the purpose of clarifying the issues for the jury's consideration and to aid in the orderly conduct of the trial process. This is a long-observed rule." Richardson v. State,403 So.2d 297 (Ala. 1981). Here, the trial judge asked his questions only after both the defense counsel and the prosecutor had completed their examination of Ms. Hardy. His questions did not assume her guilt or divulge his opinion of the evidence. Johnson v. City of Birmingham, 338 So.2d 7
(Ala.Cr.App. 1976). In his oral instructions, the judge charged the jury that he had "no opinion as to the facts" and that he did not want the jury "to think that from any rulings . . . [he had] made or motions that have been ruled on that . . . [he had] any regard to the facts of the case."
 III
In the District Court, Ms. Hardy was sentenced to seven days in jail, suspended for one year, and fined $100 in each case. She appealed to the Circuit Court for a trial de novo and was convicted by a jury. The trial judge sentenced her to three months in jail and a $500 fine in the disorderly conduct case and six months in jail and a $1,000 fine in the resisting arrest case. Ms. Hardy argues that the fact that the circuit court sentence was greater than the district court sentence unconstitutionally "hampered" her right of appeal.
Due process forbids the imposition of a harsher sentence in retaliation for the defendant's exercise of his right to appeal. North Carolina v. Pearce, 395 U.S. 711, 723-24,89 S.Ct. 2072, 2079-80, 23 L.Ed.2d 656 (1969). However, Pearce
does not apply to a sentence after an appeal and a trial de novo in a two-tier system for adjudicating criminal offenses.Colten v. Kentucky, 407 U.S. 104, 112-120, 92 S.Ct. 1953,1958-1962, 32 L.Ed.2d 584 (1972).
The trial judge agreed with defense counsel that his sentence was severe: "Now I agree the sentence is severe but I think it's a severe crime anytime you hustle with police officers and attempt to take a loaded firearm from them. I believe that's severe and from the facts that were presented at trial, higher charges could have been brought but they weren't." We find no impropriety in this regard.
 IV
The State presented a prima facie case that Ms. Hardy was guilty of both disorderly conduct and resisting arrest. The State's evidence shows that sometime after 8:00 on the night of April 15, 1983, there was a shooting inside the Oak Tree Lounge. Daphne Police Officer Melvin Johnson was dispatched. Later that night, Officer Johnson was again dispatched to the Oak Tree Lounge. As he arrived, he saw Ms. Hardy's sister, Marietta Lawson, standing in the parking lot with a shotgun in her hand. There were eight or ten other people there also, including Ms. Hardy, "all standing together." Johnson testified that "(t)heir behavior was they were loud, cussing and all this excited." Immediately upon his arrival, Ms. Lawson placed the shotgun in a car. Officer Johnson retrieved the weapon and began "trying to talk to them and tell them to quiet down and go home. That we had had enough trouble out there that night and we didn't want any more trouble out there, to just go on home."
The crowd came "running into" Officer Johnson telling him that he "didn't have a right to get the shotgun out of the car." In a "loud and boisterous" manner, Ms. Hardy said, "You are wrong, you can't get this gun out of this car." Johnson testified that he informed the crowd that they were *Page 269 
under arrest "(a)t the point where they all started crowding around me trying to take the shotgun from me."
At least four people, including Ms. Hardy, were trying physically to take the shotgun from Officer Johnson. The "end result" of the situation was that Michael Lawson, Ms. Hardy's brother, "got real loud" and "grabbed hold" of Johnson and "tussled with him" so Johnson "placed him under arrest first." When another officer started putting Lawson in a patrol car "all of them jumped" Johnson and "jumped on" him. Johnson testified that there were at least "four but there was probably more than that" that jumped him: "It was a whole family of them around me."
When specifically asked what Ms. Hardy did to resist arrest, Johnson testified: "They was pulling my clothes. Like I said, I was tussling with four or five of them. One was pulling on one side and one was pulling on the other side trying to take the gun away from me and I was scuffling trying to keep them from getting it", and Ms. Hardy was in that group. Johnson stated that Ms. Hardy "just attacked me with the crowd" by "(p)ulling on my arm, pulling on the gun."
Officer Johnson began "tussling" with Archie Lawson, another brother of Ms. Hardy. When the officer "was down in the mud on the ground" with Archie, Ms. Hardy "had left and was heading down the driveway walking." However, while Officer Johnson and Archie were "tussling", Michael Lawson, whom another officer was trying to place in a patrol car, "called somebody that was up in the crowd and told them, . . . `Come help me, I can't get a-loose from him.'" Michael also "hollered, `Get the gun, get the gun, shoot the mf in the back, shoot the mf in the back.'"
Jewell Lawson, whose family owned the Oak Tree Lounge, was visiting her mother who lived near the lounge. She testified that she and her husband "were frightened and we called the police to come back because they had guns and one started back into the lounge . . . . there was just a scrummage with a lot of noise and obsenities being yelled." Maxine Jackson was with Mrs. Lawson and testified that "it was shooting and arguing going on outside."
The State's evidence was sufficient to prove a prima facie case that Ms. Hardy "did intentionally engage in disorderly conduct with intent to cause public inconvenience, annoyance, or alarm, or recklessly created a risk thereof by engaging in fighting or in violent, tumultuous, or threatening behavior" as charged in violation of Alabama Code (1975), § 13A-11-7 (a)(1). This statute is "designed to protect the public from being annoyed, inconvenienced or alarmed." § 13A-11-7 Commentary. The subsection under which Ms. Hardy was charged and convicted "covers the sort of public activity that is traditionally within the common law concept of breach of the peace." §13A-11-7 Commentary.
Officer Johnson's testimony also shows that Ms. Hardy resisted arrest by intentionally preventing or attempting to prevent a peace officer from effecting a lawful arrest of herself or another person under Alabama Code (1975), §13A-10-41 (a). Submission to arrest after it has been resisted does not atone for the prior unlawful conduct. King v. State,89 Ala. 43, 8 So. 120 (1890).
Here, there was legal evidence from which the jury could infer Ms. Hardy's guilt. Toles v. State, 170 Ala. 99,54 So. 511 (1911); Autry v. State, 34 Ala. App. 225, 38 So.2d 348
(1949).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 270