Teresa Coleman was indicted for robbery in the second degree, in violation of § 13A-8-42, Code of Alabama 1975. The jury found the appellant guilty of the offense charged in the indictment and she was sentenced to fifteen years' imprisonment.
At approximately 9:00 on the morning of October 3, 1985, sixty-five-year-old Gordon Mitchell left his residence on Old Columbus Road in Tuskegee and went and got a haircut. After the haircut, he went to the bus station and waited for a cab which took him to East End Grocery. A tan car was parked outside when he arrived, and, one of the occupants, Sarah Jenkins, went inside the store. Once Mitchell got inside the store, Jenkins asked him for some money and Mitchell gave her a couple of dollars. Mitchell then bought some cigarettes and soft drinks and left the store.
Once outside, Jenkins asked Mitchell to go around to the back of the store. Mitchell followed her to the back where Jenkins tried to take his wallet. Mitchell managed to get away and went back to the cab and told the driver what had happened. Mitchell saw Jenkins get in the tan car and the cab drove Mitchell home.
Shortly after Mitchell arrived home, the tan car pulled into the yard and Jenkins got out and came in the house. She offered to have intercourse with Mitchell for $2. Mitchell agreed and paid Jenkins $20 after they had finished.
At this point, the appellant and two men came into the house. Jenkins, the appellant, and the two men began trying to get Mitchell's wallet. The four threw Mitchell on the floor and the appellant took his wallet. Mitchell's pants pocket and shirt were torn in the process.
Shortly after the four left, Gertrude Teasley, Mitchell's landlady, came home. *Page 873 
Mitchell told her he had been robbed and she called the police. Officer Edwin Shipman of the Tuskegee Police Department responded to the call. Mitchell gave him a description of the suspects and the car they were in. About an hour after talking to Mitchell, Shipman stopped a vehicle fitting the description given to him by Mitchell. The five occupants of the vehicle were taken to the police station where the appellant, Jenkins, and two of the males were identified by Mitchell.
Sarah Jenkins stated that, when she saw Mitchell at East End Grocery, she asked him for $1 and he gave her $2. She then went to the back of the store to use the restroom and Mitchell followed her and propositioned her. Mitchell told her to follow his cab to his house but not to stop if his landlady's car was there.
Jenkins went back to her car in which Alfonso Ezell, Michael Powell, and the appellant were waiting. They then followed the cab to Mitchell's house.
Once there, Jenkins went inside and Mitchell offered her $40 to have sex. Jenkins told him no, even though she came to Mitchell's house knowing what he wanted. The appellant then came in the house and Mitchell offered her the same deal. The appellant accepted and Jenkins went outside and waited by the car.
A short while later, Jenkins heard Mitchell and the appellant arguing. She heard the appellant tell Mitchell that she had "laid down" with him and she was not going to give the money back.
Jenkins went back into the house and the appellant was walking out with her money in her hand. Jenkins asked Mitchell if there was anything wrong and he told her to leave before his landlady came home. Jenkins, Powell, and Ezell then went back to their car and left.
The appellant's testimony was basically the same as Jenkins's story. She said Jenkins told her on the way to Mitchell's house that Mitchell had some money he wanted to spend and she knew what Jenkins meant. She testified that, after she had sex with Mitchell, he wanted the money back. She and Mitchell argued and scuffled over the money and then she left. On her way out, the appellant heard Mitchell tell Jenkins that nothing was wrong and he wanted them to leave.
 I
The appellant contends that the trial judge improperly questioned the witnesses at trial, and, thus, denied her a fair trial.
 "A trial judge may 'pose questions to a witness for the purpose of clarifying the issues for the jury's consideration and to aid in the orderly conduct of the trial process.' Richardson v. State, 403 So.2d 297 (Ala. 1981). 'The trial judge has the right to propound such questions to witnesses as may be necessary to elicit certain facts, . . .; and it not only is the court's prerogative to so act, but its duty, if the court deems it necessary to elicit proper evidence bearing on the issues.' Rice v. Hill, 278 Ala. 342, 343, 178 So.2d 168, 169
(1965) (citations omitted). '[W]ith certain exceptions, no rule of law exists which limits the power of a judge in a criminal trial to interrogate a witness during his examination. He may ask any question which either the state or the accused had the right to ask, or which it was their duty to ask, but which has been omitted, if the answer may be relevant.' Holmes v. State, 22 Ala. App. 373, 115 So. 849 (1928). 'The unquestioned province of the court — in fact, the solemn and sacred duty of a trial judge — is the development and establishment of the truth, and in this connection it is always permissible for the court, and if it appears necessary for him to do so it is his duty, to propound to witnesses such questions as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to the one party or the other.' Brandes v. State, 17 Ala. App. 390, 391, 85 So. 824, 825 (1920)." Timmons v. State, 487 So.2d 975, 981
(Ala.Cr.App.), cert. denied, 487 So.2d 975 (Ala. 1986).
The trial judge questioned Mitchell about his being a veteran on family care, and the source of his money. (R. 44-47, 49-50.) *Page 874 
He asked Teasley whether the rules she had for her tenants were given to her by the Veteran's Administration. (R. 65.) The cab driver was asked if he later saw the car he had seen at East End Grocery. (R. 87.) Officer Shipman was asked if Mitchell had his billfold after the alleged robbery. (R. 76.) The police investigator for this case was questioned about the description of one of the male suspects in this case. (R. 95-96.) Jenkins was questioned about one of the male suspects, about whether she knew Mitchell was a disabled veteran, and about what she told the appellant before going to Mitchell's residence. (R. 131-34.) The trial judge questioned the appellant about why she went into Mitchell's house. (R. 157-59.)
Here, the trial judge's questions did not assume the appellant's guilt or divulge his opinion of the evidence.See Hardy v. State, 455 So.2d 265 (Ala.Cr.App. 1984). The trial judge was merely clarifying the testimony of the witnesses or bringing out some additional relevant facts. See Bradley v.State, 494 So.2d 750 (Ala.Cr.App. 1985), affirmed,494 So.2d 772 (Ala. 1986). Our review of the court's questions convinces us that the appellant was not prejudiced by them.
Furthermore, the trial judge, in his oral charge, thoroughly instructed the jury on the fact that the questions he asked were not of any particular importance and did not imply that he felt one way or the other about the case. (R. 175-77.) His charge sufficiently purged the taint of any prejudice his questions may have caused. Thompson v. State, 503 So.2d 871
(Ala.Cr.App. 1986), affirmed, 503 So.2d 887 (Ala. 1987). Oglenv. State, 440 So.2d 1172 (Ala.Cr.App. 1983).
The trial judge's question of the witnesses in this case did not deny the appellant a fair trial. Hinkle v. State,50 Ala. App. 215, 278 So.2d 218 (1973).
 II
The appellant contends that the sentence imposed upon her constitutes cruel and unusual punishment. The appellant was found guilty of a Class B felony and sentenced to fifteen years. The range of punishment for a Class B felony is "not more than 20 years or less than 2 years." Ala. Code, §13A-5-6(a)(2) (1975).
"As long as the sentence imposed by the trial court is within statutory boundaries, the Court of Criminal Appeals will not overturn the decision absent clear abuse. Wilbourn v. State,457 So.2d 1001 (Ala.Cr.App. 1984)." Pickron v. State,475 So.2d 600, 601 (Ala.Cr.App. 1975).
"Even where the punishment prescribed by the legislature is severe by reason of its extent, as distinguished from its nature, there is no collision with the Eighth Amendment.Beasley v. State, 408 So.2d 173 (Ala.Cr.App. 1981), cert. denied, 408 So.2d 180 (Ala. 1982)." Rocker v. State,443 So.2d 1316, 1322 (Ala.Cr.App. 1983), cert. denied, 443 So.2d 1316
(Ala. 1984).
We find that the trial judge did not abuse his discretion by imposing this particular sentence on this appellant.
 III
The appellant asserts that the state failed to establish a prima facie case of robbery in the second degree. Section13A-8-42(a), Code of Alabama 1975, provides that: "A person commits the crime of robbery in the second degree if he violates § 13A-8-43, and he is aided by another person actually present." Section 13A-8-43(a) reads:
 "A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) uses force against the person of the owner or any person present with intent to overcome his physical resistance or physicial power of resistance; or "(2) threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
The victim in this case, Gordon Mitchell, stated that the appellant and two men came into the house soon after he had had intercourse with Jenkins. All four attempted to get Mitchell's wallet. In the *Page 875 
process, Mitchell was thrown to the ground and his pants pocket and shirt were torn. The appellant took his wallet during this scuffle.
The testimony of the victim alone is sufficient to establish a prima facie case of robbery. Pickett v. State, 417 So.2d 589
(Ala.Cr.App. 1982). From the facts set out above, it is clear to this court that the appellant, in the course of committing a theft, used force against Mitchell to overcome his physical resistance, and at the time, she was aided by another person who was present.
Thus, we hold that the state presented sufficient evidence from which the jury could conclude, by fair inference, that the appellant was guilty of the offense charged. See Wright v.State, 432 So.2d 510 (Ala.Cr.App. 1983).
 IV
Defense counsel contends that he was not given the opportunity to challenge his refused written requested charge and the state's given written requested charge at a reasonable time.
Prior to closing arguments, the trial judge informed both sides of the charges he intended to give and those he would not give. He gave defense counsel an objection to each of his refused charges and to each of the state's given charges. After the court's oral charge, defense counsel was given the opportunity to enter specific objections to the refusal or giving of each charge, as well as to any other part of the court's oral charge. Thus, we find no merit in defense counsel's argument that the trial court violated Rule 14, Temp.A.R.Crim.P.
The trial judge initially refused to charge the jury on the offense of robbery in the third degree. After the oral charge, defense counsel objected to the court's failure to give a third degree robbery charge. The trial judge changed his mind and then charged the jury on this offense.
Thus, any error in the trial judge's initial refusal to charge on robbery, third degree, is harmless after he instructed the jury on this offense. Rule 45A, A.R.A.P.
Furthermore, after the court gave this additional charge, defense counsel stated that ". . . the defense is satisfied with the clarity of comments and the charge that was just given." (R. 198.) Thus, he did not preserve this issue for review on appeal.
In his oral charge, the trial judge stated:
 "Now, while we're discussing the fact that no other charges are involved, I think that there is a legal matter that needs to be somewhat unraveled for you. And you need to understand the law about this. And I think counsel mentioned it during closing argument, but I will attempt to make a precise statement of the law about this. It is illegal under the law of the State of Alabama to make a contract for the purchase of sexual favors, and there would be — there can be no contract. The reported agreement to give sexual favors for pay would be an illegal agreement and would not give rise to a right to receive money." (R. 179.)
The appellant asserts that the above charge essentially negated his defense of claim of right to the two charges of theft included in the court's charge. (Note: Claim of right is not a defense to a charge of robbery. Ala. Code, § 13A-8-44
(1975)).
The trial judge correctly told the jury that a contract for sexual favors does not give the appellant a claim of right to the money under the illegal contract. McCord v. State,501 So.2d 520, 531 (Ala.Cr.App. 1986). Thus, any negation of the appellant's claim of right defense was proper under the circumstances.
The trial judge did not err in refusing to give the appellant's written requested charges # 3, 4, 8, 9, and 10. All of these charges were either covered by the court's oral charge or were incorrect statements of the law. There is no error here. Section 12-16-13, Code of Alabama 1975; also, Rule 14, Temp.A.R.Crim.P. *Page 876 
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.