On Remand from the Alabama Supreme Court
This court's prior judgment has been reversed, and the cause remanded by the Supreme Court of Alabama. Ex parte Vrocher,813 So.2d 796 (Ala. 2000). In compliance with the Supreme Court's opinion, we now address the merits of the appellant's appeal.
A jury convicted the appellant, Edward Vrocher, of burglary in the third degree, a violation of § 13A-7-7, Ala. Code 1975, and sexual abuse in the second degree, a violation of § 13A-6-67, Ala. Code 1975. He *Page 801 
was sentenced to 10 years' imprisonment on the burglary conviction; that sentence was suspended to 3 years' imprisonment. He was sentenced a one year's imprisonment on the sexual abuse conviction. The appellant's suspended sentence was conditioned upon his undergoing intensive inpatient treatment for sexual disorders.
The appellant and his family lived next door to T.M. and her children. Her younger son, Z.D., was 10 years old when T.M. and her family moved into a residence two houses from the appellant's residence. Z.D. testified that he became friends with the appellant and his son. He testified that the appellant gave him expensive gifts and money. He testified that the appellant first touched his genitalia when he was spending the night with the appellant's son. Z.D. testified that the appellant would regularly come to his bedroom window at night and talk to him through the open window. Z.D. also testified that the appellant touched him on his genitalia one night through the open window. On that night, T.M. heard noise from her son's room, and upon investigation, discovered the appellant at the open window to her son's room, with his hands under the sheets on her son's bed. T.M. recognized the appellant and screamed at him to get away from her son. The appellant clutched a pillow he had brought to the window with him and ran toward his residence. The appellant testified that he never touched Z.D. on his genitalia and that, on the night T.M. saw him reaching through the window of her son's room, he was rubbing Z.D. on his stomach in an attempt to wake him.
 I.
The appellant contends that the trial court erred in denying his motion for a mistrial because, he argues, the trial court improperly asked hypothetical questions and those questions resulted in ineradicable prejudice to him.
The record indicates that the following colloquy occurred at the conclusion of the State's cross-examination of the appellant:
 "[Prosecutor]: And your actions toward the little boy were something you couldn't help, weren't they?
"[Defendant]: Were my actions toward him something —
 "[Prosecutor]: Going over at midnight to rub his stomach is something you just couldn't help, wasn't it, Mr. Vrocher?
"[Defendant]: I didn't go over to rub his stomach.
"[Prosecutor]: Thank you. That's all.
 "[The Court]: But you rubbed his stomach when you got there, sir?
"[Defendant]: In an attempt to wake him, yes.
 "[The Court]: If someone came to your child's window between twelve midnight and one a.m. and stuck their arms through the window and proceeded to rub your child, would you consider that to be appropriate conduct?
 "[Defendant]: If someone — Would I consider that to be appropriate conduct?
"[The Court]: Yes, sir.
"[Defendant]: No.
 "[The Court]: And if someone kissed your son's stomach, would you consider that to be appropriate conduct?
"[Defendant]: No.
 "[The Court]: And if your son [N.] allowed another man to call him daddy [sic] —
 "[Defendant]: Now, you said if anybody did that. If I did it, it would be different.
"[The Court]: It would be different.
 "[Defendant]: If I — You asked me if I — if anybody rubbed [N.]'s stomach. If I *Page 802 
rubbed [N.]'s stomach I don't think that would be inappropriate.
"[The Court]: If someone other —
 "[Defendant]: You implied if it was somebody besides me, but if it was me and I was his daddy, it would be different.
"[The Court]: But you're not [Z.D.'s] daddy, are you?
"[Defendant]: Am I his biological father? No.
"[The Court]: But you let him call you daddy?
 "[Defendant]: During that period of time I was a father figure to him and that was something that was his choice.
 "[The Court]: And if your son [N.] called another man daddy, would you consider that to be appropriate?
 "[Defendant]: If my son [N.] were calling someone else daddy I would think that I wasn't doing my job.
 "[The Court]: But you were doing your job by letting [Z.D.] call you daddy?
 "[Defendant]: I didn't say it was my job. We discussed — He said he wanted to —
 "[The Court]: [Defense Counsel], Do you have any more questions for your client?
 "[Defense Counsel]: No, sir, but I would like to approach the bench, Judge.
"[The Court]: All right. You may step down."
Outside the jury's presence, the following colloquy took place:
 "[The Court]; All right. Let the record reflect that the jury has gone out. [Defense counsel] has something he want to put on it.
 "[Defense counsel]: Yes, sir. Your Honor, I would enter an objection to the Court interjecting questions to the witness that I view to be taking an adversarial side in the case. It would be reflective of his comments or amount to a comment on the evidence. And by his questions expressing doubt in his questions to this witness, we think it's prejudicial to the defendant, the Court inserting itself into the question-and-answer period and by the questions that were asked and the argumentative nature with the witness in which they were asked. And I would ask for the record that the Court enter a mistrial.
 "[The Court]: All right. First of all, your motion for a mistrial is denied. Secondly, I would take strident issue with your characterization as argumentative because I was very careful not to raise my voice and to ask those questions in a conversational tone. Lastly, Rule 614 of the Alabama Rules of Evidence states that the court may interrogate witnesses, not question, interrogate, whether they were called by the Court or by a party.
 "This issue has come up before, the last time in the case of Kmart Corp. v. Kyles, 723 So.2d 572 (Ala. 1998), which affirmed not only the vitality of the rule, but my right to ask questions. I, sir, am not a robot and I am not an advocate. My purpose is to seek the truth. And as long as I don't take sides and as long as I do not become argumentative, under the law I have an absolute right to ask questions.
 "I have twice told this jury that they are not to infer from anything I say or anything I do that I have an opinion as to the facts. If, however, you would like me to tell them a third time I will be more than happy to do so.
 "[Defense Counsel]: No, I just interpose — I just point out to the Court that when the questions would come to the child or to some of the State's witnesses and the Court didn't interject or communicate with the witnesses. And when it *Page 803 
came out in the defense that there were a number of questions asked by the court that this was inappropriate behavior in trying to establish the facts or whatever, and I just thought that that would appear to the jury to be a reflections of the court's attitude toward the testimony of the witness and would convey that to them and thus be prejudicial, and that's the reason for the motion.
"[The Court]: Okay. Your motion is obviously preserved."
In Harris v. State, 583 So.2d 1360, 1362 (Ala.Crim.App. 1991), this Court stated:
 "It has long been recognized that the trial judge has the right to ask witnesses questions, when deemed necessary, to elicit relevant and material evidence. See Berry v. State, 408 So.2d 548 (Ala.Crim.App. 1981), cert. denied, 408 So.2d 551 (Ala. 1982); Sprinkle v. State, 368 So.2d 554 (Ala.Crim.App. 1978). cert. quashed, 368 So.2d 565 (Ala. 1979); Satterwhite v. State, 364 So.2d 345 (Ala.Crim.App. 1977), rev'd on other grounds, 364 So.2d 359 (Ala. 1978). In conducting such examinations, however, the trial judge must not depart from a standard of fairness and impartiality. Berry; Sprinkle.
 "`The judicial power to examine a witness should be carefully exercised so as not to prejudice the accused, and questions by the court which assume the prisoner's guilt, or which assume the witness is testifying falsely, or which give the jury the impression that the court has determined that the accused is guilty, furnish a basis for reversal.'
 "Holmes v. State, 22 Ala. App. 373, 374, 115 So. 849
(1928). . . . See also Wilson."
(Emphasis omitted.)
Although a trial court may question witnesses to clarify or to develop facts in a nonprejudicial matter, it must not develop a "partisan stance." See United States v. Medina-Verdugo, 637 F.2d 649, 653 (9th Cir. 1980). Moreover, the trial court's participation in the trial proceedings must never reach the point where it appears clear to the jury that the court believes the accused is guilty. United States v. Beaty,722 F.2d 1090 (3rd Cir. 1983). See Richardson v. State, 403 So.2d 293,295 (Ala.Crim.App. 1981) ("Jurors give great weight to testimony produced by questions from the trial judge.").
 "The right of a trial judge to interrogate a witness is specifically provided for in Rule 614(b), Ala.R.Evid.; and Rule 19.2, Ala.R.Crim.P. Rule 19.2(b), states, in part:
 "`(2) Interrogation by Court. The court may interrogate witnesses, whether called by the court or by a party.
 "`(3) Objections. Objections to the calling of witnesses by the court or to interrogation by the court may be made at the time the witness is called or interrogation begins; provided, however, that the court shall give counsel an opportunity to make such objections outside the presence of the jury.'
 "Rule 614(b) and Rule 19.2 are identical, although there is a slight difference in the wording.
 "This Court recently addressed the propriety of a trial court's interrogation of a witness in Ward v. State, 814 So.2d 899, 917-18 (Ala.Crim.App. 2000). We stated in Ward:
 "`In Coleman v. State, 516 So.2d 871 (Ala.Cr.App. 1987), the appellant argued that the trial court had improperly questioned witnesses, thus *Page 804 
preventing her from receiving a fair trial. In rejecting that contention, this Court replied:
 "`"`A trial judge may "pose questions to a witness for the purpose of clarifying the issues for the jury's consideration and to aid in the orderly conduct of the trial process." Richardson v. State, 403 So.2d 297 (Ala. 1981). "The trial judge has the right to propound such questions to witnesses as may be necessary to elicit certain facts, . . .; and it not only is the court's prerogative to so act, but its duty, if the court deems it necessary to elicit proper evidence bearing on the issues." Rice v. Hill, 278 Ala. 342, 343, 178 So.2d 168, 169 (1965) (citations omitted). "[W]ith certain exceptions, no rule of law exists which limits the power of a judge in a criminal trial to interrogate a witness during his examination. He may ask any question which either the state or the accused had the right to ask, but which has been omitted, if the answer may be relevant." Holmes v. State, 22 Ala. App. 373, 115 So. 849 (1928). "The unquestioned province of the court — in fact, the solemn and sacred duty of a trial judge — is the development and establishment of the truth, and in this connection it is always permissible for the court, and if it appears necessary for him to do so it is his duty, to propound to witnesses such questions as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to the one party or the other." Brandes v. State, 17 Ala. App. 390, 391, 85 So. 824, 825 (1920).' Timmons v. State, 487 So.2d 975, 981 (Ala.Cr.App.), cert. denied, 487 So.2d 975 (Ala. 1986)."
 "`Coleman, 516 So.2d at 873. As long as the trial court's questions do not divulge its opinion of the evidence and serve to clarify the testimony of the witness or to bring out additional relevant facts, questioning by the trial court is permissible. See Coleman, 516 So.2d at 873, citing Hardy v. State, 455 So.2d 265 (Ala.Cr.App. 1984), and Bradley v. State, 494 So.2d 772 (Ala.Cr.App. 1985), affirmed, 494 So.2d 772 (Ala. 1986).'
 "The Advisory Committee's Notes to Rule 614, Ala.R.Evid., state:
 "`The trial judge may not question a witness in such a way as to indicate partiality for a party or as to indicate the judge's own feelings with regard to the credibility of a witness. To do so is to abandon the proper judicial role, by taking on the profile of an advocate; to do so would be an abuse of discretion and could lead to a reversal on appeal.'
 "See Davis v. State, 647 So.2d 52 (Ala.Crim.App. 1994); Lett v. State, 625 So.2d 1192 (Ala.Crim.App. 1993).
 "Because the appellate courts of Alabama have had few occasions to address this issue we have looked to other courts. The Sixth Circuit has recognized that there are three situations in which a trial court may have reason to interject itself into the trial proceedings. See United States v. Dandy, 998 F.2d 1344
(6th Cir. 1993), cert. denied, 510 U.S. 1163 (1994).
 "`First, judicial intervention may be necessary for clarification in a lengthy and complex trial. Second, it may be necessary for clarification where attorneys are unprepared or obstreperous or if the facts are becoming confused and neither side is able to resolve the confusion. Third, judicial intervention may be necessary *Page 805 
if a witness is difficult or if the witness's testimony is not credible and the attorney fails to adequately probe the witness or if the witness becomes inadvertently confused.'
"United States v. Dandy, supra at 1353."
Smith v. State, 797 So.2d 503, 531-33 (Ala.Crim.App. 2000) (footnotes omitted).
The Alabama Supreme Court in Kmart Corp. v. Kyles, 723 So.2d 572, 576, stated that, before a trial judge's interrogation of a witness may warrant reversal, the trial judge must have abused his or her discretion and the actions must have resulted in the accused's being denied a fair trial. In Wilson v. Anderson, 420 Pa. Super. 169, 616 A.2d 34
(1992), a Pennsylvania court stated:
 "A new trial is required . . . only when the trial judge's questioning amounts to an abuse of discretion. Because a charge of this nature is of the most serious type, however, the record must clearly show prejudice, bias, capricious disbelief or prejudgment before an abuse of discretion will be found."
(Citations and internal quotation marks omitted.)
Here, the trial court erred in its extensive questioning of the appellant. The trial court overstepped its neutral boundaries in an attempt to clarify and develop the facts contained in the appellant's testimony. However, we do not believe, based on the record in this case, that the appellant suffered any prejudice. The error that occurred here was, at worst, harmless based on the overwhelming evidence of the appellant's guilt. See Chapman v. California, 386 U.S. 18 (1967).
 II.
The appellant contends that the trial court erred when it granted the State's motion in limine, which sought to exclude the testimony of his psychologist, Dr. Koch, regarding his psychological characteristics. The appellant contends that Dr. Koch would have testified that he did not fit the psychological pattern of a pedophile and that, due to personality characteristics, he merely had developed an inappropriate bonding relationship with the child victim, Z.D.
The record initially indicates that the trial court expressed its concern as to whether a mental health professional could testify in a case where the defendant had not entered a plea of not guilty by reason of insanity. In response to the trial court's concerns, defense counsel stated that he expected Dr. Koch to testify regarding the appellant's intent and motivation in developing a relationship with the victim. He further stated that Dr. Koch would testify about the appellant's personality characteristics and state that they were not typical of a pedophile. The record indicates that when the appellant was ready to call Dr. Koch as a witness, the trial court held a hearing on the admissibility of the testimony, at which time Dr. Koch informed the trial court that although he could testify to the results of the personality tests he had administered to the appellant, he could not state with a reasonable degree of scientific certainty or a reasonable degree of medical certainty that there was a nexus between the appellant's personality profile and his behavior on June 30, 1998, the date of the incident of sexual abuse. The trial court then ruled that the proffered expert testimony was irrelevant to the issues at trial.
In R.D. v. State, 706 So.2d 770, 776 (Ala.Crim.App. 1997), this Court reviewed a factual situation similar to the one in the case at bar. This Court stated:
 "The cornerstone of evidentiary law is that relevant evidence is admissible, and *Page 806 
irrelevant evidence is not. Thus, even though R.D.'s witnesses gave opinions about the reliability and validity of the test, R.D. failed to establish that the evidence was relevant to the case and, in fact, demonstrated that it was not relevant. Evidence that, according to R.D.'s own witnesses, was unrelated to whether he committed the crimes with which he was charged was clearly irrelevant and properly excluded."
Id.
Applying the aforementioned legal authority to the facts of this case and to the arguments raised by the appellant on direct appeal, we cannot say that the trial court abused its discretion in this matter.
AFFIRMED.
Cobb, Baschab, and Wise, JJ., concur. Shaw, J., concurs in the result.