Rel: June 27, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

_____

## CR-2023-0302

_____

## Z.J.H.

### v.

## State of Alabama

## Appeal from Jefferson Circuit Court, Bessemer Division (CC-19-1306 and CC-19-1220)

On Return to Second Remand

MINOR, Judge.

Z.J.H. appeals his convictions for first-degree sodomy, see § 13A-6-63(a)(3), Ala. Code 1975, and sexual abuse of a child under the age 12 years old, see § 13A-6-69.1, Ala. Code 1975.[1] On appeal, Z.J.H. argues (1)

---

[1]On original submission, this Court noticed (1) that there was a discrepancy between the sentence pronounced at the sentencing hearing

that the Jefferson Circuit Court, Bessemer Division, erred by excluding evidence of H.H.'s alleged prior sexual abuse, (2) that the circuit court erred by limiting certain expert testimony, (3) that the circuit court erred by allowing a certified facility dog in the courtroom, (4) that the circuit court erred by allowing the State to impeach K.H., and (5) that "the jury's verdicts were not supported by the great weight of the evidence." For the reasons set forth below, we affirm Z.J.H.'s convictions. But we remand the case for the circuit court to sentence Z.J.H. to not less than 10 years' postrelease supervision under § 13A-5-6(c), Ala. Code 1975, for his

---

for Z.J.H.'s conviction for first-degree sodomy and the sentencing order for that conviction and (2) that the record did not include a written sentencing order for the sexual-abuse conviction. Thus, in September 2024 this Court remanded this cause to the circuit court, by order, with instructions for that court to supplement the record with (1) a corrected sentencing order for the sodomy conviction and (2) a sentencing order for the sexual-abuse conviction. See Rule 10(g), Ala. R. App. P.

On return to remand, although the circuit court submitted a corrected sentencing order for the sodomy conviction, the circuit court did not supplement the record with a sentencing order for the sexual-abuse conviction. This Court, on October 16, 2024, thus remanded this cause to the circuit court, by order, for a second time for that court to supplement the record with a sentencing order for the sexual-abuse conviction. On remand, the circuit court complied with our instructions. (Record on Return to Second Remand, C. 5-6.) The circuit court sentenced Z.J.H. to 20 years' imprisonment on the sodomy conviction and to 10 years' imprisonment on the sexual-abuse conviction.

2

conviction for first-degree sodomy.

## FACTS AND PROCEDURAL HISTORY

In November 2018, H.H., who was 10 years old and a fifth grader at McAdory Elementary, disclosed to her school counselor that her adoptive brother, 17-year-old Z.J.H., had sexually abused her since she was in the second grade until about one month before her disclosure.

H.H., who was 14 years old at the time of the trial, testified that on many occasions Z.J.H. had sexually abused H.H. at their home on Powder Plant Road in McCalla. H.H. initially told her friends, who, in turn, alerted the school counselor about the allegations that Z.J.H., along with "French kiss[ing]" H.H., would "suck [H.H.'s] feet," "make [H.H.] rub [Z.J.H.'s] private area," and "put it in [H.H.'s] mouth." (R. 884.) H.H. also had stated that "[Z.J.H.] would make [H.H.] watch [porn videos]."[2] (R.

---

[2]When Nashira Palmer, who is employed with the Jefferson County Department of Human Resources, interviewed H.H. at the school following her disclosures to the school counselor, H.H. stated that "[Z.J.H.] would do things to [H.H.] after they watched […] porn on [Z.J.H.'s] phone." (R. 627.) That same day, Palmer interviewed Z.J.H., who denied the allegations but admitted that "[H.H.] may have walked in on him a time before while he was […] masturbating." (R. 634.) Z.J.H. also admitted to Palmer that he had received counseling for "an issue with porn." (R. 634-35.)

885.)

H.H. later told Ammy Swaby, the forensic interviewer at the Clay House, that "[Z.J.H.] would make [H.H.] rub [Z.J.H.'s] private area until it leaked and [Z.J.H.] would kiss [H.H.] and suck on [her] feet and [Z.J.H.] would make [H.H.] sit on [Z.J.H.'s] face." (R. 890-91.) H.H. stated that, when Z.J.H. made H.H. sit on Z.J.H.'s face, H.H.'s clothes would be off and that "[Z.J.H.] would lick [H.H.'s] private area." (R. 891.) H.H. stated that she used the word "leak" because "when [Z.J.H.] would tell [her] to [rub his thing], [Z.J.H.] would say that." (R. 892.)

H.H. stated that the last time she went into Z.J.H.'s room and planned to ask Z.J.H. something, Z.J.H. had notes on his stomach that read "[t]he only way—one way to wake me up is to remove the blanket and suck me" and another one that read "that's the only way and underlined only." (R. 892-93.) H.H. stated that she "slid" the notes under her other adoptive brother K.H.'s door but that K.H. said that he threw the notes away. (R. 892-94.) H.H. testified that it was not the first time she had told K.H. about what Z.J.H. had done to H.H. H.H. testified that

4

"[K.H.] told [H.H.] not to tell mom."[3] (R. 898-99.)

In his defense, Z.J.H. denied any inappropriate contact with H.H. But Z.J.H. admitted that H.H. had walked in on him while he was masturbating while watching pornography.

A jury convicted Z.J.H. of one count of first-degree sodomy and one count of sexual abuse of a child less than 12 years old. Z.J.H. now appeals.

## I. EVIDENCE OF H.H.'S ALLEGED PRIOR SEXUAL ABUSE

Z.J.H. argues that "[t]he circuit court denied [him] his constitutional right to present a defense by excluding evidence that H.H. ha[d] been previously sexually abused." (Z.J.H.'s brief, p. 15.) See Rule 412(b)(3), Ala. R. Evid. Z.J.H. argues that the evidence was relevant because, he says, it "explained how [H.H.] could have possibly known about the type of sexual acts alleged apart from the State's position that Z.J.H. abused H.H." (Z.J.H.'s brief, p. 23.)

Rule 412, Ala. R. Evid., provides:

"(a) Evidence Generally Inadmissible. The following evidence is not admissible in any prosecution for criminal sexual conduct except as provided in sections (b) and (c):

"(1) evidence offered to prove that any

---

[3]K.H. denied that H.H. had told him about the sexual abuse or the incident during which H.H. said she had slid notes under his door.

5

complaining witness[4] engaged in other sexual behavior.

"....

"(b) Exceptions. The following evidence is admissible, if otherwise admissible under these rules:

"....

"(3) evidence the exclusion of which would violate the constitutional rights of the defendant."

The State before trial moved in limine to exclude "any specific instances of [H.H.'s] sexual behavior and/or sexual predisposition" under Rule 412 (2d Supp. R. 132). Z.J.H. argued at a pretrial-motion hearing that "there may have been prior abuse of the child, which would explain the words that she knew at the time that these allegations were made," and that "the history of potential abuse is relevant." (1st Supp. R. 41.) After noting that H.H.'s adoptive mother S.H. had called H.H. "promiscuous,"[5] the State argued that no such evidence existed:

"Actually, [Z.J.H.'s] mother [S.H.] did specifically on several occasions refer to [H.H.] as being promiscuous and

_____

[4]A "complaining witness" is defined as "[a]ny person alleged to be the victim of the crime charged, the prosecution of which is subject to the provisions of this rule." Rule 412(d)(1), Ala. R. Evid.

[5]Z.J.H.'s counsel also stipulated "that [H.H.] is not sexually promiscuous .... I will stipulate [H.H.] never had sex." (1st Supp. R. 41.)

6

that it wasn't her son that had a problem, but that it was [H.H.] who was promiscuous. So in reading that and then this alleged prior sexual abuse.

"There is absolutely no record of that whatsoever. The only person who's ever alleged that, again, is [Z.J.H.'s] mother [S.H.], who is also the same one who called [H.H.] promiscuous. And she is the only person that has ever alleged that [H.H.] was potentially, you know, sexually abused or otherwise prior to their family getting her in foster care and then adopting.

"There were no reports of abuse. [The Department of Human Resources] did a thorough investigation into this case about family history and all of that, and there was no evidence or no alleged abuse prior to her coming into the H[.] family."

(1st Supp. R. 42.)

The circuit court granted the State's motion, holding: "[W]e're not going to backdoor sexual behavior around rape shield just because it's a novel argument unless you can show me some law that there is—here's the rape shield, but here's an exception to that rule. And I hadn't heard that." (1st Supp. R. 53-53.)

The State at trial objected to testimony from H.H.'s adoptive mother S.H. about H.H.'s prior behavior—"[o]ne was bed-wetting …, and the other one was masturbation." (1st Supp. R. 487-88.) Z.J.H. argued: "We're not saying [H.H.] was sexually active or was promiscuous," but "[w]hat knowledge—what words was [H.H.] exposed [to] before coming to

7

this home." (1st Supp. R. 493.) The circuit court sustained the State's objection, finding that these facts had not presented an exception to Rule 412. (1st Supp. R. 494-95.)

In <u>Johnson v. State</u>, 394 So. 3d 613, 617 (Ala. Crim. App. 2023), we held that an alleged error in the granting of a motion in limine excluding evidence must be preserved by an adequate offer of proof at trial. In <u>Johnson</u>, this Court recognized that "[t]he circuit court, under Rule 412, Ala. R. Evid., was tasked with balancing the privacy interests of S.T. with Johnson's right to present a defense," but that Johnson's offer of proof was lacking:

> "Johnson asserted below, as he does on appeal, that the evidence was essential to explain S.T.'s knowledge of sexual acts and her age-inappropriate language. All that was before the circuit court when it ruled on the State's motion, however, was that S.T. 'was molested by an 11-year-old in Talladega County' the year before Johnson's abuse. (R. 18.)
>
> "….
>
> "The allegations against Johnson were that S.T. performed oral sex on him and that he touched S.T.'s 'pocketbook' and her 'boobies.' Given the dearth of information before the circuit court, it would have been impossible for it to assess whether the prior instance of sexual abuse would have been relevant to explaining S.T.'s knowledge of sexual acts or her purportedly age-inappropriate language. The absence of an offer of proof similarly prevents this Court from assessing whether the circuit court abused its discretion in granting the

8

State's motion to prohibit the evidence."

394 So. 3d at 617-18 (footnote omitted).

Z.J.H.'s proffer consisted of nothing more than unsupported, nonspecific assertions. That inadequate proffer "prevents this Court from assessing whether the circuit court abused its discretion in" disallowing the evidence, and thus the issue is not preserved for appellate review. Johnson, supra.

Even if the issue were preserved, the circuit court did not deny Z.J.H. his constitutional right to present a defense by excluding the alleged evidence indicating that H.H. had been sexually abused before coming to Z.J.H.'s home. Cf. Ex parte Dennis, 730 So. 2d 138, 141 (Ala. 1999) ("[T]he constitutionality of [Rule 412's] application is to be determined on a case-by-case basis."). The circuit court correctly concluded that the purported evidence of H.H.'s prior sexual abuse— which was entirely unsubstantiated—fell outside an exception to the general inadmissibility of such evidence under Rule 412. Thus, Z.J.H. is due no relief on this issue.

## II. EXPERT TESTIMONY

Z.J.H. argues that the circuit court erred by limiting the testimony

of forensic psychologist Dr. Kimberly Ackerson. Z.J.H. argues that Dr. Ackerson, who evaluated Z.J.H., would have testified about Z.J.H.'s personality traits and their relationship to sexual deviance. (Z.J.H.'s brief, pp. 23-30.)

"[A] trial court has broad discretion over the admissibility of expert testimony at trial, and a court's exercise of that discretion will not be reversed unless it has palpably abused that discretion." R.D. v. State, 706 So. 2d 770, 775 (Ala. Crim. App. 1997).

The circuit court ruled that it would allow Dr. Ackerson to testify about pornography addiction, a matter that was brought into trial through, among other evidence, testimony that Z.J.H. had admitted to his mother that he had a pornography addiction (R. 572):

> "THE COURT: As it relates to the defendant's response regarding the differences as it relates to them opening the door regarding a certain character trait. I will note that the only character—well, the only issue that they have brought is the issue of a porn addiction and what [e]ffect the porn addiction would have on his behavior during that time.
>
> "So, therefore, I am going to allow Dr. Ackerson to testify. However, it will be solely on what she's testified to at the end of this hearing which is related to the porn—the alleged porn addiction and what [e]ffect, if any—if he had one and, you know, what [e]ffect it had on—you know, basically everything she testified as it relates to the porn addiction."

(R. 1066.) Z.J.H. declined to call Dr. Ackerson to testify "[c]onsidering the limiting guidance from the Court." (R. 1070-71.)

To the extent that Z.J.H. argues that the circuit court erred by prohibiting Dr. Ackerson's testimony about her psychological evaluation of Z.J.H. and its relationship to general sexually deviant behavior, this argument lacks merit.

In Vrocher v. State, 813 So. 2d 799 (Ala. Crim. App. 2001), this Court affirmed a circuit court's ruling that an expert witness's testimony was not relevant and was thus inadmissible because the witness "could not state with a reasonable degree of scientific certainty or a reasonable degree of medical certainty that there was a nexus between the [defendant's] personality profile and his behavior on … the date of the incident of sexual abuse." 813 So. 2d at 805. "Thus, Vrocher provides implicit support for the conclusion that it is proper for an expert witness to state an opinion in such terms." Keaton v. State, 375 So. 3d 44, 102 (Ala. Crim. App. 2021).

In R.D., supra, this Court affirmed a circuit court's refusal to allow expert testimony about sexual-functioning-inventory- and personality-inventory-test results that R.D. claimed were critical to his defense

because, he said, they showed that he did not manifest the symptoms of a sexual abuser of children. 706 So. 2d at 774. This Court agreed with the circuit court's ruling that the evidence was both improper character evidence and was "clearly irrelevant." 706 So. 2d at 775-76. The expert "could not say, on the basis of the test results, whether R.D. was guilty or innocent" and acknowledged that the sexual-functioning inventory "[could] not tell [her] whether someone has ever actually experienced a sexual episode with a person of this age category" and that the personality inventory was not used for measuring sexual deviance. 706 So. 2d at 775.

> "[E]ven though R.D.'s witnesses gave opinions about the reliability and validity of the tests, R.D. failed to establish that the evidence was relevant to the case and, in fact, demonstrated that it was not relevant. Evidence that, according to R.D.'s own witnesses, was unrelated to whether he committed the crimes with which he was charged was clearly irrelevant and properly excluded."

706 So. 2d at 776.

Like the accused in R.D., Z.J.H. failed to show that Dr. Ackerson's testimony would have tended to prove or disprove a material fact as required for relevancy under Rule 401, Ala. R. Evid., or that, even if relevant, the evidence would not be substantially outweighed by the

danger of confusing or misleading the jury under Rule 403, Ala. R. Evid. Dr. Ackerson admitted that her testing could not determine whether someone committed a specific sexual offense, and, while she opined that she could testify about whether Z.J.H. met certain criteria consistent with sexual deviancy, she appeared unable to testify with a reasonable degree of scientific certainty or a reasonable degree of medical certainty that there was a nexus between Z.J.H.'s personality profile and his behavior on the dates that he allegedly sexually abused H.H. (R. 1043-65.)

When the circuit court asked Dr. Ackerson whether she could testify as required by <u>Vrocher</u> and its progeny, she replied:

> "THE COURT: Okay. And so we have this personality profile of [Z.J.H.] And I guess the question per case law is are you able to testify that there is a nexus between the personality profile that you have of [Z.J.H.] and the alleged, I guess, behavior between—his alleged behavior in November of 2017 and November 2018 is the question.
>
> "[Dr. Ackerson]: Well, again, I'm—I'm a little uncomfortable that people are focusing just on that test. I never used a test or a singular test.
>
> "....
>
> "In other words, the testing allows us to get information about his overall values, his thoughts and thinking. And that would be similar to how he was at the time of the offense,

13

especially if you look at all the other information provided."

(R. 1047-48.)

Under these circumstances, the circuit court did not err by refusing to permit Dr. Ackerson's testimony about Z.J.H.'s personality traits related to general sexually deviant behavior. Thus, Z.J.H. is due no relief on this issue.

### III. CERTIFIED FACILITY DOG

Z.J.H. argues that "[t]he circuit court erred by allowing a certified facility dog" in the courtroom because, he says, the State "failed to show the need for the use of a certified facility dog and [that] its use of the dog throughout the trial caused significant prejudice to [him]." Z.J.H. also argues that "the State's violation of the [circuit] court's order to keep its certified facility dog out of view of the jury requires a new trial." (Z.J.H.'s brief, pp. 31-38.)

Section 12-21-148(b), Ala. Code 1975, provides: "In a legal proceeding, to reduce the stress of a witness and to enhance the ability of the court to obtain full and accurate testimony, the court may allow a certified facility dog to accompany a victim or witness while testifying." Section 12-21-148(c) provides that the trial court exercises "sole

14

discretion" over allowing a certified facility dog.

The State before trial moved to allow a certified facility dog under § 12-21-148 asserting that the dog's presence would help reduce H.H.'s stress and anxiety after she had "expressed anxiety about testifying in court." (1st Supp. R. 104-06.) Z.J.H. objected, arguing that the State's "pet" would prejudice him, and requested similar accommodation at trial because of his having "suffered humiliation and ostracization." (1st Supp. R. 111.) The circuit court granted the State's motion and denied Z.J.H.'s request for similar accommodation. (R. 21.)

Before H.H.'s testimony, Z.J.H. again objected, arguing that "this dog was paraded through the hallway full of jurors" and that it was seen through a glass panel "sitting and hugging and loving on [H.H.]" (R. 857-58.) The State admitted that "[H.H.] [wa]s having a little bit of a breakdown" and needed the comfort of the dog and that it had allowed the dog to go to H.H. in the conference room and comfort her before she took the stand. (R. 859-60.) The circuit court overruled Z.J.H.'s objection and allowed the dog to sit with H.H., instructing the jury that the dog was present in the courtroom and that it should not concern them or create any prejudice as to any party. (R. 868.) Later during H.H.'s

15

testimony, the dog made a noise, which Z.J.H.'s counsel described as "whimpering" and a "distraction," requiring the dog's handler to signal that it needed a break. (R. 906-07.) Z.J.H. again moved to exclude the dog from the courtroom, which motion the circuit court denied. (R. 907-08.)

The State showed that the certified facility dog would assist in H.H.'s ability to testify about the sexual abuse. Thus, the circuit court did not abuse its considerable discretion in allowing the certified facility dog to sit at H.H.'s feet during her testimony.

And Z.J.H.'s claim of unfair prejudice is not persuasive. Other than his own statements, Z.J.H. offered nothing to show that the use of the certified facility dog distracted the jury. Finally, the circuit court properly instructed the jury that the certified facility dog should not concern them or create any prejudice as to any party. "[W]e presume the jury followed the [circuit] court's instructions." Harrison v. State, 398 So. 3d 955, 974 (Ala. Crim. App. 2023). Thus, Z.J.H. is due no relief on this issue.

IV. IMPEACHMENT OF K.H.

Z.J.H. argues that the circuit court erred by allowing the State, over

16

his objections, to impeach K.H.'s testimony.[6] Z.J.H. points to testimony from Jefferson County Department of Human Resources employee Nashira Palmer and statements made in H.H.'s forensic interview pertaining to K.H., as well as several occasions during his own testimony. Z.J.H. argues that, during those instances, the State impeached him without specifically confronting him with the circumstances of his prior statements as required by Rule 613(b), Ala. R. Evid. Z.J.H.'s issue is not properly preserved for appellate review. See Ex parte Coulliette, 857 So. 2d 793, 794 (Ala. 2003) (quoting Newsome v. State, 570 So. 2d 703, 717 (Ala. Crim. App. 1989)) (" 'Review on appeal is restricted to questions and issues properly and timely raised at trial.' "). "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith, 526 So. 2d 880, 882 (Ala. 1987). Thus, Z.J.H. is due no relief on this issue.

---

[6]K.H., Z.J.H.'s brother and who was 12 or 13 years old at the time of the allegations and 19 years old at the time of trial, denied that one week before his father had passed away, H.H. had disclosed to him that "[Z.J.H.] would make [H.H.] rub him until it leaked" or that "[K.H.] told [H.H.] not to tell [their] mom" or that "[H.H.] gave [K.H.] letters that [Z.J.H.] had [given] her." (R. 714-15.) Jefferson County Department of Human Resources employee Nashira Palmer testified and recalled that K.H. had admitted all those statements to her.

## V. WEIGHT OF THE EVIDENCE

Z.J.H. contends that "the jury's verdicts were not supported by the great weight of the evidence." (Z.J.H.'s brief, p. 48.) Z.J.H. asserts that the State's case was "based entirely on H.H.'s disclosure and testimony," that "no physical or other corroborating evidence exist[ed]," and that "due to H.H.'s history of dishonesty, the State's evidence [wa]s so lacking here [as] to render the verdicts wrong and unjust." (Z.J.H.'s brief, pp. 48-51; Z.J.H.'s motion for a new trial, R. 223.)

> "'"Once a prima facie case has been submitted to the jury, this Court will not upset the jury's verdict except in extreme situations in which it is clear from the record that the evidence against the accused was so lacking as to make the verdict wrong and unjust. Deutcsh v. State, 610 So. 2d 1212, 1234-35 (Ala. Crim. App. 1992). This Court will not substitute itself for the jury in determining the weight and probative force of the evidence. Benton v. State, 536 So. 2d 162, 165 (Ala. Crim. App. 1988)."

"'May v. State, 710 So. 2d 1362, 1372 (Ala. Crim. App. 1997).

> "'"Furthermore, on appeal, there is a presumption in favor of the correctness of the jury verdict. Saffold v. State, 494 So. 2d 164 (Ala. Crim. App. 1986). Although that presumption of correctness is strong, it may be overcome in a limited category of cases where the verdict is found to be palpably wrong or contrary to the great weight of the evidence. Bell v. State, 461 So. 2d 855, 865 (Ala.

18

Crim. App. 1984)."

"'Henderson v. State, 584 So. 2d 841, 851 (Ala. Crim. App. 1988).'"

S.A.J. v. State, 195 So. 3d 327, 345 (Ala. Crim. App. 2015) (quoting Thompson v. State, 97 So. 3d 800, 810 (Ala. Crim. App. 2011)).

H.H.'s testimony alone sufficiently established a prima facie case of first-degree sodomy, see § 13A-6-63, and sexual abuse of a child less than 12 years old, see § 13A-6-69.1. "'[T]he victim's testimony alone is sufficient to establish a prima facie case of either rape or sexual abuse.'" Williams v. State, 10 So. 3d 1083, 1087 (Ala. Crim. App. 2008) (quoting Jones v. State, 719 So. 2d 249, 255 (Ala. Crim. App. 1996)). Considering that, this Court holds that the evidence here is not so lacking as to warrant reversal of the jury's verdicts. "'"[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.'"'" Williams, 10 So. 3d at 1087 (quoting Johnson v. State, 555 So. 2d 818, 820 (Ala. Crim. App. 1989) (additional citations omitted)). Thus, Z.J.H. is due no relief on this issue.

## VI. POSTRELEASE SUPERVISION

Although the issue has not been raised on appeal, this Court recognizes that the circuit court did not impose a period of postrelease

supervision on Z.J.H.'s conviction for first-degree sodomy. Because "[m]atters concerning unauthorized sentences are jurisdictional," Hunt v. State, 659 So. 2d 998, 999 (Ala. Crim. App. 1994), this Court may take notice of an illegal sentence at any time. See, e.g., McCall v. State, 794 So. 2d 1243 (Ala. Crim. App. 2000). Z.J.H.'s conviction for first-degree sodomy was for a Class A felony sex offense involving a child, and thus the circuit court should have imposed on the conviction "an additional penalty of not less than 10 years of post-release supervision to be served upon the defendant's release from incarceration." § 13A-5-6(c), Ala. Code 1975. That statute provides:

> "In addition to any penalties heretofore or hereafter provided by law, in all cases where an offender is designated as a sexually violent predator pursuant to Section 15-20A-19, [Ala. Code 1975,] or where an offender is convicted of a Class A felony sex offense involving a child as defined in Section 15-20A-4, [Ala. Code 1975,[7]] and is sentenced to a county jail or the Alabama Department of Corrections, the sentencing judge shall impose an additional penalty of not less than 10 years of post-release supervision to be served upon the defendant's release from incarceration."

See also Bishop v. State, 344 So. 3d 906, 915 (Ala. Crim. App. 2021).

---

[7]"Sex Offense Involving a Child" is defined as "[a] conviction for any sex offense in which the victim was a child or any offense involving child pornography." § 15-20A-4(27), Ala. Code 1975.

20

We thus remand this cause for the circuit court to impose not less than 10 years of postrelease supervision on Z.J.H.'s conviction for first-degree sodomy to be served upon Z.J.H.'s release from incarceration.

CONCLUSION

We affirm Z.J.H.'s conviction for first-degree sodomy and his conviction and sentence for sexual abuse of a child under the age of 12. We remand this cause to the circuit court with instructions for it to conduct a new sentencing hearing at which Z.J.H., represented by counsel, must be given a sentence that includes not less than 10 years of postrelease supervision for his conviction for first-degree sodomy. Due return must be filed with this Court no later than 56 days from the date of this opinion. The return to remand must include a transcript of the proceedings conducted on remand and a new sentencing order for the first-degree-sodomy conviction.

AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.

Windom, P.J., and Cole and Anderson, JJ., concur. Kellum, J., concurs in the result.